1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Eleanor Webber, et. al.,                )    No. CV 05-4219-PHX-NVW
                                              )
10              Plaintiffs,                    )    **ORDER**
                                              )
11   vs.                                       )
                                              )
12                                             )
     Mark  B.  McClellan,  Administrator,)
13   Centers  for  Medicare  &  Medicaid)
     Services; Michael O. Leavitt, Secretary of)
14   the  Department  of  Health  and  Human)
     Services,                                 )
15                                             )
                Defendants.                    )
16                                             )
     _____)
17

18         The court has considered Defendants' motion to dismiss (doc. # 25), Plaintiffs'

19   response  (doc. # 29),  Defendants'  reply  (doc. # 39),  and  the  parties'  supplemental

20   submissions.

21         Plaintiffs Eleanor Webber (through her conservators), Judith Schneider, and the Gray

22   Panthers Project Fund (the "Gray Panthers") brought this action against Mark McClellan, the

23   Administrator  of  Centers  for  Medicare  &  Medicaid  Services,  and  Michael  Leavitt,  the

24   Secretary of the Department of Health & Human Services (the "Secretary"), challenging

25   certain new practices and policies used in the Medicare coverage appeals process as violative

26   of the Constitution and various federal statutes.  Plaintiffs' action takes issue with the entire

27   set of new regulations governing ALJ hearings in Medicare coverage appeals, 42 C.F.R. §§

28   405.1000-.1064,  but  more  specifically  with  those  regulations  (1)  that  provide  for

videoteleconference hearings instead of in-person hearings under most circumstances, even where the beneficiary desires an in-person hearing, (2) that establish only four locations in the United States for in-person hearings, and (3) that waive, for cases in which a beneficiary obtains an in-person hearing, the deadline requiring that appeals decisions on coverage be made within 90 days.  Plaintiffs also seek to certify a class consisting of all Medicare beneficiaries whose coverage claims have been or will be denied and who sought or will seek ALJ review subject to the new regulations.

Defendants now move to dismiss Plaintiffs' Complaint on jurisdictional and procedural grounds.  In response to Defendants' motion to dismiss, Plaintiffs have filed an Amended Complaint naming Anna Frank, William Prescott, Carol Upton, and Marshall Chazen as additional plaintiffs.  As requested by Defendants, the court evaluates the motion to dismiss in light of and as applied to the Amended Complaint.  (*See* doc. # 39 at 1, n. 1.)

**I.      The Amended Complaint's Challenges Within the Regulatory Scheme**

Medicare beneficiaries who have been denied services or payment for services are entitled to several levels of administrative review of the denial.  *See* 70 Fed. Reg. 11420, 11426 (March 8, 2005).  First, the beneficiary may seek "redetermination" of the decision by the original Medicare contractor.  42 U.S.C. § 1395ff(a)(3).  If still dissatisfied, the beneficiary may request "reconsideration" of the decision by a qualified independent contractor.  42 U.S.C. § 1395ff(c).  Further review is then available in the form of a hearing with an ALJ.  42 U.S.C. § 405(b)(1).  Finally, the beneficiary may appeal the ALJ's determination to the Departmental Appeals Board.  42 U.S.C. § 1395ff(d)(2).  Subsequent judicial review of the decision by the Departmental Appeals Board may then be available, but only if the beneficiary has timely and appropriately attempted to obtain relief at each of the foregoing administrative levels.  *Heckler v. Ringer*, 466 U.S. 602, 606 (1984); 42 U.S.C. § 1395ff(b)(1)(A) (incorporating judicial review under 42 U.S.C. § 405(g)).

Plaintiffs' Amended Complaint challenges three of the Secretary's practices related to the ALJ hearings at the third stage of administrative review, namely (A) hearings by videoteleconference; (B) the small number of locations established for in-person hearings;

1   and (C) waiver of the 90-day decision deadline where an in-person hearing is given.  The

2   court briefly presents the statutory and regulatory provisions pertinent to each of these

3   challenges.

4          **A.      Videoteleconferencing**

5          In 2003, Congress passed legislation which has led to the use of videoteleconferencing

6   by ALJs as opposed to in-person hearings.  *See* Medicare Prescription Drug, Improvement,

7   and Modernization Act of 2003, Pub. L. No. 108-173, sec. 931, 117 Stat. 2066, 2396 (the

8   "2003 Act").  The 2003 Act ordered the Commissioner of Social Security and the Secretary

9   to create and later implement a plan for shifting responsibility over Medicare appeals from

10  the Social Security Administration to the Department of Health and Human Services.  *Id.* at

11  sec. 931(a) and (b), 117 Stat. at 2396-98.  Congress specifically described the plan to be

12  created, in relevant part providing:

13              (2) Contents.– The plan shall include information on the
                following:
14              . . .
                    (G) Access to administrative law judges.– The feasibility
15              of–
                        (i) filing appeals with administrative law judges
16                  electronically; and
                        (ii) conducting hearings using tele- or video-
17                  conference technologies.

18  *Id.* at sec. 931(a), 117 Stat. at 2396-97.  The Secretary recently promulgated regulations

19  making videoteleconferencing the preferred method for conducting ALJ hearings:

20              Time and place for a hearing before an ALJ.
                . . .
21              (b) Determining how appearances are made.  The ALJ will
                direct that the appearance of an individual be conducted by
22              videoconferencing (VTC) if the ALJ finds that VTC
                technology is available to conduct the appearance.  The ALJ
23              may also offer to conduct a hearing by telephone if the request
                for hearing or administrative record suggests that a telephone
24              hearing may be more convenient for one or more of the parties.
                The ALJ, with the concurrence of the Managing Field Office
25              ALJ, may determine that an in-person hearing should be
                conducted if—
26                  (1) VTC technology is not available; or
                    (2) Special or extraordinary circumstances exist.

27

28

- 3 -

42 C.F.R. § 405.1020. The regulation's effect is to deny in-person ALJ hearings to beneficiaries who desire an in-person hearing except in "special or extraordinary circumstances" or where technology for videoteleconferencing cannot be provided.

### B.     Number of Locations for In-Person Hearings

The 2003 Act also required the Secretary to provide an "appropriate geographic distribution of administrative law judges . . . throughout the United States to ensure timely access to such judges." Pub. L. No. 108-173, sec. 931(b)(3), 117 Stat. 2066, 2398. Plaintiffs allege that the Secretary has located ALJs at only four sites in the United States: Arlington, Virginia; Cleveland, Ohio; Irvine, California; and Miami, Florida. (Amended Complaint at ¶ 19.)

### C.     Waiver of the 90-Day Rule

Section 1395ff(d) of Title 42, U.S.C., provides that hearings and decisions by ALJs must be rendered within a certain time and that an ALJ's failure to render a timely decision will allow the beneficiary to automatically advance to the next level of administrative review:

> (d) Deadlines for hearings by the Secretary; notice
> (1) Hearing by administrative law judge
> (A) In general
> Except as provided in subparagraph (B), an administrative law judge shall conduct and conclude a hearing on a decision of a qualified independent contractor under subsection (c) and render a decision on such a hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed.
> (B) Waiver of deadline by party seeking hearing.
> The 90-day period under subparagraph (A) shall not apply in the case of a motion or stipulation by the party requesting the hearing to waive such period.
> . . .
> (3) Consequences of failure to meet deadlines
> (A) Hearing by administrative law judge
> In the case of a failure by an administrative law judge to render a decision by the end of the period described in paragraph (1), the party requesting the hearing may request a review by the Departmental Appeals Board of the Department of Health and Human Services, notwithstanding any

requirements for a hearing for purposes of
the party's right to such a review.

Under the new regulations, however, this 90-day decision deadline is deemed waived in cases where a beneficiary asks for and receives an in-person hearing. 42 C.F.R. § 405.1020(i)(4).

## II.   Venue

Defendants challenge venue in this district for all plaintiffs except Eleanor Webber, who is an Arizona resident. The other individual Plaintiffs are residents of other states. Gray Panthers is a Pennsylvania corporation with its principal place of business in the District of Columbia. For venue purposes, a corporation resides in its state of incorporation. *Denver & Rio Grande W. R.R. v. Hd. of R.R. Trainmen*, 387 U.S. 556, 559-60 (1967).

The venue statutes applicable to Plaintiffs' claims depend on the statute alleged to give rise to jurisdiction. Section 405(h) of Title 42, U.S.C., as incorporated by 42 U.S.C. § 1395ff, bars Plaintiffs' challenges to the actions of the Secretary to the extent they are brought under 28 U.S.C. § 1331. *See*, *e.g.*, *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 1092 (2000). However, Defendants concede, though reserving for challenge on appeal, that in this Circuit mandamus jurisdiction under 28 U.S.C. § 1361 is not ousted by 41 U.S.C. §§ 1395i and 405(h). (Doc. # 25 at 15, n.15 (citing *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003).) The court must therefore determine whether venue is appropriate under either 28 U.S.C. § 1361 or under 42 U.S.C. §§ 1395ff and 405(g).

The venue of judicial review of Medicare decisions under 42 U.S.C. § 1395ff, incorporating 42 U.S.C. § 405(g), is "in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . ." Plaintiffs assert, "Since venue under 42 U.S.C. § 405(g) is proper for at least one named plaintiff, venue lies in this District. See Def. Mem. at 8-9." (Doc. # 29 at 8.) However, Plaintiffs cite no legal authority for this interpretation of § 405(g). Neither do Defendants cite any legal authority for their contrary interpretation. The text of § 405(g) does not purport to allow plaintiffs in diverse states each asserting their own claim against the Commissioner to join in one action in any state in which any one of them has proper venue. Though the general

1   venue statute for actions against federal officers in their official capacity, 28 U.S.C. §

2   1391(e), and similar statutes have been so construed, *see A. J. Taft Coal Co. v. Barnhart*, 291

3   F. Supp. 2d 1290, 1301-1302 (N.D. Ala. 2003) (citing cases), there is good reason to think

4   § 405(g), authorizing review of "any final decision," at most authorizes joint plaintiffs to

5   bring an action in a single venue for the same final decision.  In the absence of citation to any

6   different authority, this court so construes § 405(g).  There being no single decision under

7   review in this action common to all Plaintiffs, whether final or exempt from exhaustion,  the

8   attempts by the non-resident Plaintiffs to bring their individual and distinct claims in this

9   District cross over the venue boundary of § 405(g).  Therefore, only Plaintiff Webber may

10  maintain any claims in this action under that jurisdictional grant and authorization for judicial

11  review.

12       Plaintiffs alternatively assert venue under the mandamus statute, 28 U.S.C. § 1361,

13  for which the Mandamus and Venue Act, 28 U.S.C. § 1391(e)(3), allows venue where "the

14  plaintiff resides if no real property is involved in the action."  As noted above, proper venue

15  for one plaintiff is good for all under this statute.[1]  Hence, venue is proper in this district for

16  all Plaintiffs' mandamus claims and only Plaintiff Webber's claims under 42 U.S.C. §

17  405(g).  The court now addresses the jurisdictional and justiciability challenges to those

18  claims.

19  **III.     Standing**

20       Defendants next argue that none of the Plaintiffs alleges sufficient injury to satisfy

21  Article III's standing requirement.  This requirement is separate from the question of

22  "statutory standing" or exhaustion, although the doctrines may overlap.  *See Hall v. Norton*,

23  266 F.3d 969, 975 n.5 (9th Cir. 2001) (analyzing separately Article III standing and statutory

24  "standing" under the Administrative Procedures Act, which itself includes a requirement of

25

26       [1]Plaintiffs do not assert venue under the general statute, 28 U.S.C. § 1391(b), no doubt
    because no "substantial part of the events or omissions giving rise to the claim occurred" in
27  Arizona, none of the Defendants resides in Arizona, and there is at least one other district in
28  which the action may be brought.

1    "final agency action" similar to that of the Medicare Act); *Churchill County v. Babbitt*, 150

2    F.3d 1072, 1077-1078 (9th Cir. 1998), *as amended*, 158 F.3d 491 (1998) (same).  The Article

3    III standing determination is made with a view to the circumstances as they exist at the

4    initiation of the suit, *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1339 (9th Cir.

5    1992), and pertains individually to each form of relief sought.  *Friends of the Earth, Inc. v.*

6    *Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000).

7            "A plaintiff suing in a federal court must show in his pleading, affirmatively and

8    distinctly, the existence of whatever is essential to federal jurisdiction . . . ."  *Tosco Corp. v.*

9    *Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations

10   omitted).  However, "[f]or purposes of ruling on a motion to dismiss for want of standing,

11   both the trial and reviewing courts must accept as true all material allegations of the

12   complaint, and must construe the complaint in favor of the complaining party."  *Warth v.*

13   *Seldin*, 422 U.S. 490, 501 (1975) (citations omitted).  The court, moreover, will "presume

14   that general allegations embrace those specific facts that are necessary to support the claim."

15   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (alterations and internal quotations

16   omitted).  The court also may properly consider extrinsic evidence and resolve factual

17   disputes relevant to jurisdiction.  *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770,

18   778 (9th Cir. 2000).

19           As a general matter,

20           [T]he irreducible constitutional minimum of standing contains
             three elements.  First, the plaintiff must have suffered an "injury
21           in fact"–an invasion of a legally protected interest which is (a)
             concrete and particularized, and (b) "actual or imminent, not
22           conjectural or hypothetical."  Second, there must be a causal
             connection between the injury and the conduct complained
23           of–the injury has to be "fairly traceable to the challenged action
             of the defendant, and not the result of the independent action of
24           some third party not before the court."  Third, it must be
             "likely," as opposed to merely "speculative," that the injury will
25           be "redressed by a favorable decision."

26   *Lujan*, 504 U.S. at 560-61 (citations, internal quotations and alterations omitted).

27

28

1

## A.      Standing of the Individual Plaintiffs

2      The parties entertain fundamentally different ideas about the nature of the injury

3   alleged by these individual plaintiffs.  Plaintiffs understand that injury as procedural in

4   nature, in that the Secretary violated their statutory and constitutional right to an in-person

5   hearing.  Defendants, however, acknowledge these plaintiffs' allegations of harm only

6   insofar as the use of videoteleconferencing has resulted in reduction of their benefits.

7   Defendants argue that no Plaintiff has standing unless a videoteleconference hearing would

8   result in a substantive decision less favorable than an in-person hearing.  (Doc. # 39 at 2:7-

9   16.)  Implicitly, if the plaintiffs were awarded full benefits after a videoteleconference

10   hearing, there was no "harm."   For example, Defendants argue that the use of

11   videoteleconference technology in the hearings recently provided to Webber and Schneider

12   did not affect the outcomes; according to Defendants, Webber "won" her hearing,[2] and

13   Schneider's unfavorable result was based on purely legal grounds that could not have been

14   affected by use of videoteleconference technology.  (Doc. # 25 at 9:10-23, 10:21-11:2.)

15      To the contrary, the individual Plaintiffs need not demonstrate a reduction in benefits

16   to have standing to challenge the Secretary's actions.  "Procedural standing is standing based

17   on a plaintiff's procedural injury."  *Babbitt*, 150 F.3d at 1077.  By asserting procedural

18   standing the plaintiffs may seek:

19                  to enforce a procedural requirement the disregard of which
                  could impair a separate concrete interest of theirs (*e.g.*, *the*
20                  *procedural requirement for a hearing prior to denial of their*
                  *license application*, or the procedural requirement for an
21                  environmental impact statement before a federal facility is
                  constructed next door to them.)
22
   *Lujan*, 504 U.S. at 572 (emphasis added).  The Ninth Circuit has recognized procedural
23
   standing predominantly in the area of environmental law, but it may apply whenever a
24
   plaintiff alleges a violation of statutorily mandated procedures that, if disregarded, *might*
25

26

27      [2]Plaintiff Webber's favorable decision was reversed on higher appeal and remanded
   for further administrative proceedings.  This moots Defendants' argument that she won her
28   hearing.

impair the plaintiff's "separate concrete interest."  *Hall*, 266 F.3d at 975 (citing *Lujan*, 504 U.S. at 572 & n.7); *see*, *e.g.*, *Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1039 (9th Cir. 2006) (holding that pharmacy managers' failure to conduct statutorily-mandated statistical studies of retail drug pricing and to provide the results to clients was an actionable "procedural injury" to the plaintiff pharmacies, where the pharmacies sought to enforce the requirement because providing accurate information about market pricing to those involved in pharmaceutical transactions could lead to more favorable reimbursement rates to the pharmacies); *Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) (holding that Bureau of Prison's violation of the APA in passing early release regulations was an actionable "procedural injury" to the plaintiff inmates denied release under the regulations issued, even though there was no suggestion that regulations passed properly would have accorded the plaintiff inmates early release); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1112 (9th Cir. 2002) (holding that plaintiffs met standing requirement by asserting a "procedural injury" based on the Forest Service's violation of statutory requirement that agencies create and publicize an environmental impact statement before taking action, given the plaintiffs' interest in nearby land affected by the agency action); *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1514 n.11 (9th Cir. 1992) (holding that plaintiffs had alleged an actionable "procedural injury" by challenging the defendant's "failure to analyze or disclose fully the environmental effects of the Forest Plan Implementation Schedule, a failure which amounted to a violation of the NFMA, NEPA and the APA," where the plaintiffs had a concrete interest in continuing to use of the land affected) (citations and quotations omitted). Here, like the license applicants postulated in *Lujan* seeking to enforce a hearing requirement prior to denial of their license applications, Webber and Schneider are asserting "procedural standing" to enforce a hearing requirement arguably imposed for their benefit and disregarded by the Secretary.

"To establish procedural standing, the plaintiff must show: (1) that it has been accorded a procedural right to protect its concrete interests, and (2) that it has a threatened

1  concrete interest that is the ultimate basis of its standing." *Babbitt*, 150 F.3d at 1077

2  (citations omitted); *accord Beeman*, 449 F.3d at 1038; *Paulsen*, 413 F.3d at 1005.

3      It is implicit in the Amended Complaint that statutes underlying the individual

4  Plaintiffs' claims accord procedural rights to the individual Plaintiffs.  Whether the statutes

5  have that effect is the ultimate merits issue in this case, but Plaintiffs sufficiently show

6  arguable basis to meet the first branch of procedural standing.  Congress established

7  procedures that arguably appear to be for the benefit of Medicare beneficiaries: Congress

8  statutorily instructed the Secretary to provide hearings to Medicare beneficiaries, 42 U.S.C.

9  § 1395ff(b)(1)(A), to provide an "appropriate geographic distribution of administrative law

10  judges . . . throughout the United States," Pub. L. No. 108-173, sec. 931(b)(3), 117 Stat.

11  2066, 2398, and to have ALJ decisions rendered within 90 days after a beneficiary's hearing

12  request.  42 U.S.C. § 1395ff(d)(1)(A).

13      It is also implicit in the Amended Complaint and explicit in Plaintiffs' briefs that those

14  alleged procedural rights are said to be, at in least in general and to the minimal extent

15  necessary for procedural standing, in furtherance of their concrete interests in incrementally

16  more accurate and more user- comforting decision-making and processes.  This sufficiently

17  alleges a concrete interest in Plaintiffs' Medicare benefits to serve as the "ultimate basis" of

18  their standing.  *Lujan*, 504 U.S. at 573 n.8.  Economic benefit is generally sufficient to

19  provide the "identifiable trifle" of interest required to satisfy standing.  *United States v.*

20  *Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 690 n.14; *see also Hall*,

21  266 F.3d at 976 & n.6 (listing concrete injuries such as "traffic, pollution, and noise"

22  (citations and internal quotations omitted)).  Plaintiffs may have economically derived

23  interests in receiving a timely decision after their hearing and in attending a hearing within

24  a reasonable distance of their residence.  (*E.g.*, Amended Compl. at ¶ 30.)

25      Plaintiffs must show that the Secretary's actions threaten their concrete interests in

26  order to satisfy the causation element of standing, although the causation requirement in

27  cases of procedural standing is relaxed.  *See Babbitt*, 150 F.3d at 1077; *Public Citizen v.*

28  *Dep't of Transp.*, 316 F.3d 1002, 1016 (9th Cir.), *overruled on other grounds*, 541 U.S. 752

(2004).  A plaintiff asserting procedural standing "need not establish causation with the degree of certainty that would be required for him to succeed on the merits, say, of a tort claim.  Rather, [the plaintiff] need only establish the reasonable probability of the challenged action's threat to his concrete interest."  *Hall*, 266 F.3d at 977 (citations, alterations and quotations omitted); *accord Beeman*, 449 F.3d at 1038.  Loss of the alleged incrementally better ability to perceive and evaluate witnesses and the greater comfort to applicants in personal presentation and presence at the hearing are sufficient threats to Plaintiff's concrete interests for the minimal requirements of standing.

In general, the relief Plaintiffs seek would give some redress for their claimed rights. "In cases of procedural injury . . . plaintiffs need not demonstrate that the ultimate outcome following proper procedures will benefit them."  *Kootenai Tribe*, 313 F.3d at 1113 (citations and internal quotations omitted); *accord Mumma*, 956 F.2d at 1518.  Rather, it is sufficient to show that the use of proper procedures "could" result in a different outcome.  *Hall*, 266 F.3d at 977; *see also Kootenai Tribe*, 313 F.3d at 1113 ("It is enough that [use of proper procedures] *may* redress plaintiffs' alleged injuries." (emphasis added)).  The direct benefit of the improved hearing procedures that Plaintiffs demand is redress in itself.  They need not show that their individual claims would be decided differently to meet this requirement.

Several of the individual Plaintiffs, however, do not allege that the Secretary has denied them the procedures they desire, or that they even have requested those procedures. Plaintiff Anna Frank alleges only that she "intends to appeal the denial" of her $140 claim but does not allege that she will ask for an in-person hearing.  Plaintiff William Prescott does not allege that he even asked for an in-person hearing.[3]  Though Plaintiff Carol Upton asked for an in-person hearing, she retreated from that request when she later asked for a "hearing either by phone or in person."  (Doc. # 39, Exh. F.)  Plaintiff Marshall Chazen does not

---

[3]Prescott lacks standing for the additional reason that his January 1, 2005 appeal predates the July 1, 2005 effective date of the challenged regulations.

1    allege that he demanded an in-person hearing.[4]  These Plaintiffs cannot complain that they

2    did not get what they did not ask for, so the injury they complain of cannot be said to be other

3    than speculative.

4        Plaintiff Webber lacks standing to challenge the videoteleconference rule as such

5    because she was offered an in-person hearing. She declined the in-person hearing due to the

6    inconvenient location of the hearing. That leaves her with standing to challenge only the

7    location of in-person hearings but not the rule restricting in-person hearings.[5]

8        Any challenge to the narrowing to four in-person hearing sites is necessarily

9    predicated upon getting an in-person hearing or having standing to challenge the denial of

10   an in-person hearing, for only such persons could be harmed by, and could question the

11   appropriateness of, only four hearing locations, or even only one.

12       Thus, on the Amended Complaint and undisputed evidence submitted on this motion,

13   only Plaintiffs Webber and Schneider have standing to challenge locations of in-person

14   hearings, and only Plaintiff Schneider has standing to challenge the videoteleconference rule.

15       No Plaintiff alleges or could allege sufficient standing for a pre-hearing challenge to

16   the regulation's attempted extinguishment, for persons given an in-person hearing, of the

17   statutory requirement to rule in 90 days.  No one could be harmed by that rule unless they

18   get such a hearing and do not receive a ruling within 90 days.  Thus,  pre-decision

19   adjudication of the validity of that rule would be speculative, hypothetical, and quite possibly

20   unnecessary.  Plaintiffs would lack standing until and unless the ALJ does not rule within 90

21   days.  But at that point the applicant would have a ready administrative remedy by claiming

22

23       [4]Chazen also has not alleged that he has any stake in the appeals taken by Aoki
24   Diabetes Research Institute, which apparently provided care to him.

25       [5]Of course, Defendants may defend the appropriateness of the number and location
26   of hearing locations in part on the validity of the restrictive videoteleconference hearing rule,
     which reduces the justification for more widely dispersed hearing locations.  Thus, the
27   validity of the videoteleconference hearing rule may be adjudicated in due course even
     though Plaintiff Webber lacks direct standing to challenge it.  The court does not prejudge
28   whether this issue arises or how it would be decided.

the statutory right to immediate review at the next administrative level, thus precipitating a decision, subject to 42 U.S.C. § 405(g) judicial review, of the validity of that rule.

**B.   The Standing of Plaintiff Gray Panthers**

An organization may assert "representational standing," which "is contingent upon the standing of its members," or "organizational standing," which exists where the "organization itself has suffered an injury in fact." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citations omitted).  The Gray Panthers asserts both varieties of standing in this case.

**1.   Representational Standing**

The requirements for representational standing were set out in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977):

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

The Gray Panthers has not satisfied the first requirement, in that it has not adequately alleged that its members have standing to sue in their own right.  To satisfy this requirement, an organization must show that at least "one of the members it represents . . . has suffered injury in fact that is likely to be redressed by a favorable decision." *United States v. City & County of San Francisco*, 979 F.2d 169, 171 (9th Cir. 1992).  The Gray Panthers has alleged that its members, many of whom depend on Medicare, "will not be comfortable with VTC technology" and have "grave concerns" about the "changes to the administrative process effected by the regulations."  (Amended Compl. at ¶¶ 103-05.)  The Gray Panthers has not alleged, however, that any of its members has been denied an in-person hearing or otherwise has engaged even the first stage of the Medicare administrative appeals framework.  Although the court will "presume that general allegations embrace those specific facts that are necessary to support the claim," *Lujan*, 504 U.S. at 561 (alterations and internal quotations omitted), none of the general allegations in the Amended Complaint suggests that

1    any member of the Gray Panthers currently has a concrete, personalized dispute with regard

2    to these regulations.

3       Neither of the parties has presented dispositive authority on whether an organization

4    challenging the Secretary's regulations in a representational capacity must affirmatively

5    plead exhaustion by a member in order to survive a motion to dismiss.  For example, *Shalala*

6    *v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (1999), which is cited by Defendants

7    in this regard, held only that an organization could not bring an action on behalf of its

8    members under 28 U.S.C. § 1331, even though the organization was unable to exhaust

9    administrative remedies under the appropriate jurisdictional provision and therefore could

10   not bring an action.  *Id.* at 24.  The Court in *Illinois Council* did not address whether an

11   organization bringing an action under the appropriate jurisdictional provision would have to

12   plead its members' exhaustion of administrative remedies.  Given that Plaintiffs' Amended

13   Complaint fails to allege that any member of the Gray Panthers has more than speculative

14   injury arising from these regulations, the court need not reach this question on this motion.

15         **2.**  **Organizational Standing**

16      In support of the Gray Panthers' asserted organizational standing, the Amended

17   Complaint alleges that "the Gray Panthers has had to devote and will continue to have to

18   devote scarce time, effort, staff, and other resources to analyzing the new procedures and

19   educating and providing effective assistance to its members."  (Amended Compl. at ¶ 108.)

20   Additionally, the Amended Complaint alleges, the Secretary's regulations have "interfered

21   with and impeded the Gray Panthers' mandate, and have reduced the overall effectiveness

22   of its program and efforts."  (*Id.*)  These allegations fail to establish an injury in fact to an

23   interest of the Gray Panthers within the zone of interests protected by the Medicare Act.

24      To establish injury in fact, the Gray Panthers relies on cases involving challenges

25   under the Fair Housing Act.  In that area of law, "an organization may satisfy the Article III

26   requirement of injury in fact if it can demonstrate: (1) frustration of its organizational

27   mission; and (2) diversion of its resources to combat the particular housing discrimination

28   in question."  *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)

1  (citations omitted).  Even if this test is applicable here, however, the Gray Panthers' alleged

2  diversion of resources stems not from combating the illegal activity of a private party but

3  from compliance with the issued regulations.

4          In any event, the Gray Panthers has not alleged that its injury is to an interest within

5  the zone of interests protected by the Medicare Act.  "The question of standing . . . .

6  concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought

7  to be protected by the complainant is arguably within the zone of interests to be protected or

8  regulated by the statute or constitutional guarantee in question."  *Ass'n of Data Processing*

9  *Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970).  "[W]hether a plaintiff's interest is

10  within the zone of interests protected by a statute is to be determined not by reference to the

11  overall purpose of the Act in question . . . but by reference to the particular provision of law

12  upon which the plaintiff relies."  *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940

13  (9th Cir. 2005) (citations omitted).  Here, nothing in the relevant provisions of the Medicare

14  Act or Constitution suggests that the procedures followed by the Secretary were designed to

15  protect the interests of advocacy organizations like the Gray Panthers.  "Nowhere does the

16  Act make mention of advocacy organizations' interests."  *Ctr. for Law & Educ. v. Dep't of*

17  *Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005).  The statute references only "individuals," *e.g.*,

18  42 U.S.C. § 1395ff(b)(1)(A), and its protections "were not designed to protect some

19  threatened concrete interest of [advocacy] *organizations*."  *Id.* at 1157 (citations and

20  quotations omitted; emphasis in original); *cf. also Ashley Creek Phosphate*, 420 F.3d at 942

21  (holding that NEPA zone of interests did not extend to purely economic interests of third

22  party otherwise unaffected by agency's actions).

23  **IV.    Exhaustion**

24          Defendants also argue that Plaintiffs have not exhausted their administrative appeals

25  and therefore cannot seek review in district court.  The exhaustion requirement for Medicare

26  appeals has its origin in the "final decision" requirement of 42 U.S.C. § 405(g), which states:

27              (g) Judicial review.  Any individual, after any *final decision* of
                the Commissioner of Social Security made after a hearing to
28              which he was a party, irrespective of the amount in controversy,

> may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . .

(Emphasis added). Although directly governing only Social Security appeals, this provision is made applicable to Medicare appeals in 42 U.S.C. 1395ff(b)(1)(A).

"Pursuant to her rulemaking authority, the Secretary has provided that a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Heckler v. Ringer*, 466 U.S. 602, 606 (1984) (citations omitted). Such exhaustion of administrative remedies is required for all claims, including benefits claims, declaratory or injunctive actions, and constitutional or statutory challenges. *Illinois Council*, 529 U.S. at 13-14; *see also Weinberger v. Salfi*, 422 U.S. 749, 765-67 (1975). However, "deference to the Secretary's conclusion as to the utility of pursuing the claim through administrative channels is not always appropriate." *Heckler*, 466 U.S. at 618. Rather, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976).

> The Supreme Court has suggested, and [the Ninth Circuit has] applied, a three-part test to determine whether a particular case merits judicial waiver of the exhaustion requirement. The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility).

*Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) (citations and internal quotations omitted); *accord Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir. 1989). The Supreme Court has cautioned against "mechanical application" of the first two of these three factors, suggesting instead that the waiver inquiry should be "intensely practical." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986); *see also Illinois Council*, 529 U.S. at 15; *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) ("No one element is critical to the resolution of the issue; rather, a more general approach, balancing the competing considerations to arrive at a just result, is in order." (citations omitted)).

1    The only plaintiff with both standing and venue under 405(g) is Plaintiff Webber. The

2    court therefore addresses waiver of the exhaustion requirement specifically with respect to

3    Plaintiff Webber's claim.

4        **A.    Collaterality**

5        Plaintiff Webber's challenge is collateral to any substantive claim of entitlement. "A

6    plaintiff's claim is collateral if it is not essentially a claim for benefits." *Johnson*, 2 F.3d at

7    921(citations omitted).   Here, Plaintiff Webber has expressly disavowed making any

8    individual challenge on the merits of her claims for benefits. (Doc. # 29 at 5:10-16.)   As

9    such, her "attack is essentially to the policy itself, not to its application to [her] . . . . [Her]

10   challenge to the policy rises and falls on its own, separate from the merits of [her] claim for

11   benefits." *Kildare v. Saenz*, 325 F.3d 1078, 1082-83 (9th Cir. 2003) (citations omitted).

12   Such attacks on procedures utilized by the Secretary, when disassociated from individual

13   claims for benefits, are customarily understood to be collateral. *E.g.*, *Bowen*, 476 U.S. at 483

14   (holding that challenge to Secretary's unpublished policy, whereby the Secretary presumed

15   that claimants with certain mental deficiencies were able to perform unskilled work, was

16   collateral to any claim for benefits); *Mathews*, 424 U.S. at 330-331 (holding that procedural

17   due process claim challenging the Secretary's failure to provide a predeprivation hearing

18   before terminating social security benefits was collateral to any claim for benefits); *Cassim*,

19   824 F.2d at 795 (holding that procedural due process claim challenging the Secretary's

20   failure to provide a pre- or post-deprivation hearing before suspending plaintiff from

21   Medicare program was collateral).

22       **B.    Irreparability**

23       To meet the "irreparability" requirement, "plaintiffs must raise at least a colorable

24   claim that exhaustion will cause them irreparable injury." *Johnson*, 2 F.3d at 922 (citations

25   omitted).   "A colorable claim of irreparable harm is one that is not wholly insubstantial,

26   immaterial, or frivolous." *Kildare*, 325 F.3d at 1083 (citations omitted).  Economic hardship,

27   if appropriately pleaded, will satisfy the "irreparability" requirement. *Johnson*, 2 F.3d at 922;

28   *see also Briggs*, 886 F.2d at 1140.

1  The Amended Complaint contains no allegation, let alone a "colorable claim," that
2  requiring Webber to exhaust her administrative appeals would cause her injury irremediable
3  by later payments.  Plaintiffs argue that temporary loss of money should satisfy this
4  requirement. (Doc. # 29 at 11:11.)  However, in neither the Amended Complaint nor in their
5  briefs have Plaintiffs clarified how such temporary loss harms Webber "in a way not
6  recompensable through retroactive payments." *Mathews*, 424 U.S. at 331 (footnote omitted).

7  Mere delay in payment does not constitute economic hardship so as to satisfy this
8  requirement.  To plead economic hardship the complaint must allege not solely a temporarily
9  unsatisfied claim but harm accruing to the plaintiff because of the delay in payment.  *E.g.*,
10 *Bowen*, 476 U.S. at 484 (holding that severe medical setbacks arising from the trauma of
11 having disability benefits cut off satisfied the irreparable injury requirement); *Kildare*, 325
12 F.3d at 1083 (holding that complaint "adequately allege[d] economic hardship, such as
13 subsistence on General Assistance and food stamps, lack of medical insurance, and
14 homelessness"); *Briggs*, 886 F.2d at 1140 (holding that evidence of "several months without
15 food, shelter or other necessities" constituted a colorable showing of economic hardship so
16 as to satisfy irreparability requirement); *see also Johnson*, 2 F.3d at 922 (relying on *Briggs*'
17 reference to "several months without food, shelter or other necessities" in holding that
18 economic hardship suffered by SSI beneficiaries constituted irreparable injury).  To read
19 "economic hardship" so broadly as to include *all* delays in payment to Medicare beneficiaries
20 would effectively nullify the "irreparability" requirement, given that beneficiaries
21 challenging denials of their claims are invariably without payment while exhausting their
22 administrative remedies.

23 In these circumstances there appears, however, to be some degree of irreparability.
24 That irreparable harm is the distress and burden of having to go through appeal procedures
25 that are, by hypothesis, unlawful and will have to be repeated.  Most Medicare claimants are
26 elderly and many are infirm.  The claims are often small in relation to the economic and non-
27 economic transaction costs for such people in going through government hearings and
28 proceedings.  Those burdens themselves can sometimes deter appeals, and burdens imposed

1   unlawfully are irreparable by appeal and remand. Though the irreparability in this case is

2   attenuated, its is minimally sufficient when weighed with the substantial collaterality and the

3   patent futility of making Plaintiff Webber submit to a procedure in one place that she claims

4   a legal right to have in another place in  order to determine whether she is entitled to have

5   it in the other place.

6          **C.     Futility**

7          The ultimate decision of whether to waive administrative exhaustion "should also be

8   guided by the policies underlying the exhaustion requirement."  *Bowen*, 476 U.S. at 484.

9   "The purpose of exhaustion is to allow the agency, in the first instance, to develop a detailed

10  factual record and utilize its expertise in applying its own regulations to those facts."

11  *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 982 (9th Cir. 2002) (citations

12  omitted).  Exhaustion is futile where "nothing is gained from permitting the compilation of

13  a detailed factual record, or from agency expertise." *Johnson*, 2 F.3d at 922 (citations and

14  internal quotations omitted).

15         Compilation of a detailed factual record for Webber here would serve little purpose.

16  When assessing "straightforward" statutory or constitutional challenges to systemwide

17  policies of the Secretary, such detailed factual records are generally not useful. *See Johnson*,

18  2 F.3d at 922 (holding where plaintiffs had alleged that the Secretary's systemwide policy

19  of treating all in-kind loans as income violated the Social Security Act that the court did not

20  "need a detailed factual record for each claimant to decide such a 'straightforward statutory'

21  challenge" (citations omitted)); *Briggs*, 886 F.2d at 1140 (holding where plaintiffs challenged

22  the Secretary's policy of suspending the benefits of substance abusing beneficiaries if they

23  lacked a personal representative that "it is difficult to see . . . what sort of detailed record

24  might assist a court in determining the merits of appellants' straightforward statutory and

25  constitutional challenge"); *compare Kildare*, 325 F.3d. at 1084 (holding where plaintiffs

26  alleged a "host of individual errors" that "the errors must be determined in the context of

27  individual disability proceedings and require development of individual factual records").

28

Nor is this a case where agency expertise, as that idea is properly understood, would be particularly helpful. The relevant agency expertise lays in proper application of regulations. *See Bowen*, 476 U.S. at 485 ("Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context."); *Kildare*, 325 F.3d at 1084 (noting that "the State and Federal Defendants could apply their agency expertise in determining whether and what regulations were disregarded in each case"); *Johnson*, 2 F.3d at 922 ("[T]he exhaustion requirement allows the agency to . . . apply agency expertise in administering its own regulations."). By contrast, issues of statutory construction or constitutional interpretation are beyond the scope of that expertise. *Johnson*, 2 F.3d at 922 ("Nor do we require the benefit of agency expertise because the issue posed by the class members is one purely of statutory construction." (citations and internal quotations omitted)).

Finally, the challenged policy here is "binding on the Secretary's adjudicators." *Johnson*, 2 F.3d at 922 (internal quotations omitted). Where policies are "mandated by the highest level of the Department's hierarchy," it is "extraordinarily unlikely that an individual claimant could succeed" by bringing his claim to "one of the lower echelons of the Secretary's administrative adjudication machine." *Briggs*, 886 F.2d at 1141. For this reason as well, exhaustion "would result in a considerable waste of . . . resources." *Johnson*, 2 F.3d at 923.

In summary, excuse from exhaustion is appropriate for Webber's claim for which she has standing. That is the challenge to the narrowing of places of in-person hearings.

**V.    Mandamus**

Defendants also challenge the sufficiency of Plaintiffs' claims for mandamus under 28 U.S.C. § 1361. Because Plaintiff Schneider has venue in this district only for her mandamus claims, whether she has pleaded a sufficient claim for mandamus relief determines her continued participation in this action.

"Mandamus is an extraordinary remedy and is available to compel a federal officer to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty

is nondiscretionary, ministerial, and so plainly prescribed as to be free of doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (citations and internal quotations omitted).    Plaintiffs' claims regarding the videoteleconferencing rule and the appropriate geographical distribution of hearing officers do not satisfy this stringent requirement.  The 2003 Act ordered the Commissioner of Social Security and the Secretary to consider video-conference technologies and to implement a plan potentially including the use of such technology.  Like the mandate to provide for "appropriate geographic distribution of administrative law judges," any duty created by these statutes cannot be considered "so plainly prescribed as to be free of doubt." *Kildare*, 325 F.3d at 1084; *see also Johnson v. Shalala*, 2 F.3d 918, 924 (9th Cir. 1993) ("[M]andamus would be appropriate only when a party demonstrated that the Secretary owed him a clear nondiscretionary duty." (citations and internal quotations omitted)).

With the dismissal of the mandamus claims of the only Plaintiffs who thus far have sustained standing and venue, only Plaintiff Webber's pre-hearing challenge to the appropriateness of hearing locations survives dismissal.

**VI.    Leave to Amend**

"Often a plaintiff will be able to amend its complaint to cure standing deficiencies." *United Union of Roofers, Waterproofers, & Allied Trades v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990).  In determining whether leave to amend for such deficiencies should be granted, Fed.R.Civ.P. 15(a) applies.  *See id.*  Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires."  Because Plaintiffs Anna Frank, Carol Upton, William Prescott, and Marshall Chazen can have no standing for their pre-hearing challenges to the forced waiver of the requirement to decide in 90 days, do not have venue for their 42 U.S.C. § 405(g) challenges, and can plead no mandamus challenge on their on other two claims (even if they could amend to plead standing), they will be denied leave to amend.  Because Plaintiff Schneider's only claims for which she has standing are improperly svenued here as  42 U.S.C. § 405(g) challenges and cannot adequately be pleaded as mandamus claims, she will be denied leave to amend.  Because Plaintiff Webber's only

1   claims for which she lacks standing (general challenge to the videoteleconference rule and

2   challenge to the 90-day decision rule) are not curable, she will not be granted leave to amend.

3        **IT IS THEREFORE ORDERED** that Defendants' motion to dismiss (doc. # 25) is

4   granted as to all claims of all Plaintiffs except Plaintiff Webber's claim that her granted in-

5   person hearing should be located more conveniently to her.

6        DATED this 6th day of September 2006.

8

9                             Neil V. Wake
                       United States District Judge