**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Eleanor Webber, et al., | ) | No. CV 05-04219-PHX-NVW |
| Plaintiffs, | ) ) ) | **ORDER** |
| vs. | ) ) ) | |
| Leslie V. Norwalk, Acting Administrator for the Centers for Medicare and Medicaid Services; and Michael O. Leavitt, Secretary of the Department of Health and Human Services, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

Pending before the court is Plaintiffs' Motion for Partial Reconsideration, doc. # 46, and Defendants' Motion for Reconsideration, doc. # 47.

The ultimate merits in this case are whether the "Appeal Rights" section of the Medicare organic statute, 42 U.S.C. § 1395ff(b), grants Plaintiffs the right to a local, in-person Medicare coverage hearing, and whether the Secretary's reforms to the Medicare appeals process violated the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000 ("BIPA"), Pub. L. No. 106-554, § 521, 114 Stat. 2763A-463, 534-43, and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("Prescription Drug Act"), Pub. L. No. 108-173, § 931, 117 Stat. 2066, 2397. Rather than defend themselves on these merits, however, Defendants moved to dismiss Plaintiffs' Complaint for lack of standing and improper venue. (Doc. # 25.) Plaintiffs and Defendants

1   urge the court to reconsider various aspects of the resulting Order.  (Doc. # 45.)  The parties

2   were instructed to limit the scope of their responsive memoranda to the specific questions

3   posed by the court.  (Doc. # 48.)  Having considered the briefs of the parties, the court makes

4   the following rulings.

5   **I.      Background**

6          This is a dispute about the Secretary's response to a Congressional directive to reform

7   the Medicare claim appeals process.  The Secretary carried out the will of Congress as

8   expressed in BIPA and the Prescription Drug Act by, among other things, enacting a series

9   of regulations at 42 C.F.R. §§ 405.1000-.1064 to streamline the administrative appeals

10  program.  Medicare Program: Changes to the Medicare Claims Appeal Procedures, 70 Fed.

11  Reg. 11420, 11424 (Mar. 8, 2005).  These regulations make videoteleconferencing ("VTC")

12  the preferred method for conducting Medicare hearings before an administrative law judge

13  ("ALJ"), 42 C.F.R. §§ 405.1020(a), 1020(i)(4), and consolidate the national Medicare

14  hearings and appeals program in four regional Field Offices, sited in Virginia, Ohio,

15  California and Florida, respectively.  70 Fed. Reg. 36386-04 (Jun. 23, 2005); (Doc. # 45 at

16  2-5.)

17         Plaintiffs aver that Congress directed the Secretary to modernize the Medicare appeals

18  program in a manner consonant with the Medicare organic statute, not "pervert the statutory

19  design" by abrogating a Medicare beneficiary's right to personally attend a coverage hearing

20  before an ALJ in a convenient location.  (Doc. # 28 at 2.)  The elderly and infirm Medicare

21  beneficiaries in this case seek relief for procedural injuries allegedly caused by the

22  Secretary's reforms.  The Plaintiffs contend that the Secretary's videoteleconferencing rule

23  deprives them of an incrementally better ability to perceive and evaluate witnesses at an in-

24  person hearing.  Plaintiffs seek further relief for the loss of the greater comfort afforded to

25  them by personal rather than virtual presence at a Medicare coverage hearing.  Plaintiffs

26  finally assail the Secretary's regulations for causing them harm even when a face-to-face

27  hearing is granted.  Instead of allowing the hearing to be held at a convenient location close

28  to Plaintiffs' homes, the Secretary has effectively compelled the Medicare beneficiaries to

1   travel to one of only four Medicare Field Offices to appeal their case in person.  Complaining

2   of these injuries, Plaintiffs urge the court to strike down the Secretary's rulemaking as

3   violative of the Due Process Clause of the Fifth Amendment, the Administrative Procedure

4   Act, and, most importantly, the Medicare organic statute, 42 U.S.C. § 1395ff(b).  (*Id.* at 25-

5   27.)

6          A brief summary of the Medicare appeals process places the Secretary's reforms, and

7   Plaintiffs' objections to them, in their proper context.  The Medicare Act, 42 U.S.C. § 1395

8   *et seq.*, provides federally subsidized health insurance to eligible elderly and disabled

9   individuals.  If a Medicare beneficiary's initial request for reimbursement for inpatient

10  hospital or outpatient care is denied, 42 U.S.C. § 1395ff(a)(1), the beneficiary is entitled to

11  appeal that coverage determination through a multi-step administrative process that includes

12  a hearing before an ALJ.  42 U.S.C. §§ 1395ff(b)(1), (d)(1)(A); 42 C.F.R. § 405.720.  If the

13  beneficiary is not successful at the hearing level, which Plaintiffs characterize as the most

14  important stage of administrative review, he may plead his case to the Medicare Appeals

15  Council.  42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 1100.  The Secretary's final decision may

16  be reviewed by a federal district court pursuant to 42 U.S.C. § 1395ff(b)(1)(A), which

17  incorporates the judicial review provision of the Social Security Act, 42 U.S.C. 405(g), by

18  reference.  *See Heckler v. Ringer*, 466 U.S. 602, 627 (1984).

19  **II.    Procedural History**

20         The following aspects of the court's September 6, 2006 Order are relevant to the

21  parties' motions for reconsideration.

22         **A.    Standing**

23         Only two individual Plaintiffs had standing to sue for the procedural injuries they

24  suffered as a result of the Secretary's reforms.  *Churchill County v. Babbitt*, 150 F.3d 1072,

25  1077 (9th Cir. 1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

26         Eleanor Webber requested an in-person hearing in Connecticut to challenge an

27  adverse determination of Medicare coverage.  Webber was denied the opportunity to appear

28  before an ALJ in Connecticut, but she was granted a face-to-face hearing at the regional

1   Medicare Field Office in Arlington, Virginia.  Webber chose to prosecute her Medicare

2   appeal by videoteleconference rather than to personally attend the hearing in an inconvenient

3   location.  Therefore, Plaintiff Webber had standing to challenge the Secretary's centralization

4   of ALJ hearings in only four regional locations, but she could not challenge the rule

5   restricting in-person appeals because she was granted the right to personally attend her

6   hearing.  (Doc. # 45 at 12.)

7       Judith Schneider's request for an in-person Medicare coverage hearing near her home

8   in Ohio was denied by the ALJ.  Pursuant to the Secretary's new regulations, Schneider's

9   appeal was conducted by videoteleconference instead.  Unlike Webber, Schneider was never

10  granted a face-to-face hearing.  Therefore, Plaintiff Schneider had standing to challenge both

11  the centralization and the videoteleconferencing rules.  (*Id*.)

12      **B.   Venue**

13      Plaintiffs' allegations did not sufficiently invoke the court's mandamus jurisdiction

14  under 28 U.S.C. § 1361.  (*Id*. at 20-21.)  Therefore, venue did not lie under the general

15  federal venue rules that apply to the "extraordinary" remedy of mandamus.  (*Id*. at 6, 20.)

16      Noting the inadequacy of the parties' briefing in regard to venue in actions arising

17  under the Medicare Act, the court held that venue did not lie in the District of Arizona for

18  non-resident Plaintiffs who did not seek judicial review of the same final decision challenged

19  by resident Plaintiffs.  (*Id*. at 5-6.)  This conclusion followed from the plain language of the

20  venue provision of the Social Security Act, 42 U.S.C. § 405(g), made applicable to this case

21  by section 1394ff(b)(1)(A) of the Medicare Act.  In the absence of citation by the parties to

22  any authority, the court declined to interpret the phrase "judicial district in which *the* plaintiff

23  resides" in the Social Security Act in accordance with the nearly identical language of 28

24  U.S.C. § 1391(e), which has long been construed to read "judicial district in which *any*

25  plaintiff resides."  *See Sidney Coal Co. v. Soc. Sec. Admin*., 427 F.3d 336, 345 (6th Cir.

26  2005) (collecting cases under section 1391(e)) (emphasis added).

27       If section 1391(e) rather than section 405(g) provided the rule of decision, non-

28  resident Plaintiff Schneider could have joined resident Plaintiff Webber in laying venue in

1  the District of Arizona, the judicial district in which *at least one* plaintiff resides.  But the
2  court declined to transplant the judicial gloss surrounding the general federal venue statute
3  to the more specific Social Security venue statute in a vacuum.  Straightforward application
4  of section 405(g) to this case reduced the field of viable Plaintiffs from two Medicare
5  beneficiaries with standing to sue–Plaintiffs Webber and Schneider–to one constitutionally
6  qualified resident of the District of Arizona, Eleanor Webber.

7          **C.**    **Exhaustion**

8         The administrative exhaustion requirement contained in 42 U.S.C. § 405(g) was
9  waived as to Plaintiff Webber.  (Doc. # 45 at 15-20.)  Webber's failure to satisfy the statutory
10  prerequisite to judicial review was excused in light of the collateral nature of her claims, the
11  irreparability, though attenuated, of the harm that would inure if exhaustion were not waived,
12  and the patent futility of developing a detailed factual record when Plaintiff brought a facial
13  challenge to an administrative policy adopted at the highest levels of the Medicare
14  bureaucracy.  (*Id*.)

15  **III.**    **Defendants' Motion for Reconsideration: Plaintiff Webber's Claim Is Moot**

16         On September 6, 2006, the court found that Plaintiff Webber had standing to sue
17  Defendants for their centralization of ALJ hearings in four regional locations.  The
18  substantive claim of Medicare entitlement upon which Plaintiff's administrative appeal was
19  founded was unresolved at the time of the court's decision.  (Doc. # 45 at 17.)  On September
20  15, 2006, however, Administrative Law Judge David Coffman adjudged Plaintiff entitled to
21  Medicare reimbursement for the hospital care she received while residing in Connecticut.
22  (Doc. # 47 Ex. N.)  Plaintiff elected not to appeal the ALJ's decision.  (Doc. # 56.)  The final
23  and favorable resolution of Plaintiff's substantive claim to Medicare benefits rendered her
24  challenge to the Secretary's centralization of ALJ hearings in only four regional locations
25  moot.  Because Plaintiff's claim for relief no longer presents a live case or controversy, the
26  court no longer has jurisdiction over the subject matter of her claim.  Plaintiff Webber's
27  cause of action therefore must be dismissed.  Fed. R. Civ. P. 12(h)(3).

28

1    **A.    Mootness Doctrine**

2          Article III of the Constitution limits federal court jurisdiction to litigation presenting

3    an actual case or controversy.  U.S. Const. art. III.  The federal courts are without power to

4    resolve disagreements, whatever their nature, that fail to meet this jurisdictional prerequisite.

5    *Cmty. for Creative Non-Violence v. Hess*, 745 F.2d 697, 700 (D.C. Cir. 1984).  The case-or-

6    controversy requirement, which subsists through all stages of federal judicial proceedings,

7    trial and appellate, ensures that the federal courts will adjudicate sharply focused and

8    concrete issues, and bars the courts from addressing disputes that are imagined rather than

9    real.  *Id.*

10         Mootness has been described as "the doctrine of standing set in a time frame: The

11   requisite personal interest that must exist at the commencement of the ligation (standing)

12   must continue throughout its existence (mootness)."  *United States Parole Comm'n v.*

13   *Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry Paul Monaghan, *Constitutional*

14   *Adjudication*, 82 Yale L.J. 1363, 1384 (1973)).  "Past exposure to illegal conduct does not

15   in itself show a present case or controversy . . . if unaccompanied by any ongoing, present

16   adverse effects."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (citation

17   and internal quotations omitted).  A "generalized interest in deterrence" is "insufficient for

18   purposes of Article III."  *Id.*  Dismissal of an action as moot is required when a case loses "its

19   character as a present, live controversy of the kind that must exist if the Court is to avoid

20   advisory opinions on abstract propositions of law."  *Los Angeles County v. Davis*, 440 U.S.

21   625, 633 (1979).

22         These principles may be applied straightforwardly in this case.  Plaintiff Webber's

23   quest for Medicare benefits resulted in a favorable, final determination of coverage.  She has

24   no ongoing need for a Medicare hearing because she has received all the benefits that she

25   claims are due to her.  That Plaintiff sustained a procedural injury when her request for an

26   in-person hearing in Connecticut was denied is of no moment in light of the full

27   reimbursement ordered by ALJ David Coffman on September 15, 2006.  Granting Plaintiff

28   the injunctive and declaratory relief for which she prays, doc. # 28 at 25-27, would provide

1    no concrete  benefit to her at this point.  The court cannot grant her a new hearing to resolve

2    an imaginary Medicare benefits dispute.  A judicial declaration that a face-to-face hearing

3    should have been held in Connecticut would result in no more favorable an outcome than

4    what she has already achieved.  Such an exercise in adjudicative futility is precisely the evil

5    to which the case-or-controversy requirement is directed.  *Steel Co.*, 523 U.S. at 109 ("Past

6    exposure to illegal conduct does not in itself show a present case or controversy.")

7            Furthermore, Plaintiff presents no evidence tending to show that she labors under a

8    "real and immediate threat of repeated injury" from defective Medicare procedures, which

9    might satisfy the command of Article III despite the lack of a current coverage dispute.

10   *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (mere anticipation of wrongful conduct,

11   without more, does not show an existing controversy).  Plaintiff's sole claim of ongoing

12   injury is founded upon her belief that "Medicare appeals continue to operate under the new

13   regulations and Medicare beneficiaries continue to suffer harm as a result."  (Doc. # 52 at

14   13.)  Such a "generalized interest in deterrence" manifestly does not entitle Plaintiff to the

15   declaratory and injunctive relief that she continues to demand.  *Steel Co.*, 523 U.S. at 109;

16   *Los Angeles v. Lyons,* 461 U.S. 95, 101-02 (1983).  Because Plaintiff no longer has a legally

17   cognizable interest in the outcome of her challenge to the Secretary's procedural reforms,

18   her action must be dismissed as moot.  Plaintiff's arguments to the contrary are unavailing.

19   **B.     Procedural Standing Does Not Guarantee Justiciability**

20           Plaintiff Webber contends that the September 15, 2006 decision of the ALJ had no

21   effect on her underlying challenge to the location of her hearing.  (Doc. # 52 at 9.)  Plaintiff

22   relies to some extent upon the court's prior determination of her standing to sue in support

23   of this argument.  (*Id*. at 2.)  That reliance is misplaced.  Webber's hearing-related injury

24   gave Plaintiff her day in court, but it does not shield her claim against the case-or-

25   controversy requirement at later stages of the litigation.

26           The procedural injury suffered by Plaintiff Webber, the loss of the in-person hearing

27   at a convenient location, granted her standing under *Lujan* and its progeny.  (Doc. # 45 at 8-

28   9.)  Under the doctrine of procedural standing, Plaintiff was not required to demonstrate an

1   actual reduction in Medicare benefits in order to challenge the Secretary's centralization of

2   face-to-face hearings, nor was she required at the commencement of the case to show that

3   her coverage dispute would have been decided differently if the procedural reforms had never

4   been enacted.  (*Id.* at 8, 11.)   Standing was conferred upon a showing that the Secretary's

5   disregard of Plaintiff's statutorily guaranteed hearing rights created a "reasonable

6   probability" of a threat to Plaintiff's concrete interest in "incrementally more accurate and

7   user-comforting decision-making and process" leading to a favorable determination of

8   Medicare coverage.  (*Id.*)

9       But a live case or controversy must exist at *all* stages of the litigation, not just at the

10   beginning of the suit.  "While standing focuses on the status of the parties when an action is

11   commenced, the mootness doctrine requires that the plaintiffs' claims remain alive throughout

12   the course of the proceedings."  *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2nd Cir. 1991).

13   Plaintiff's substantive claim to Medicare entitlement was conclusively resolved in her favor

14   when she was reimbursed for the cost of her Connecticut hospital care.  The full victory of

15   the September 15, 2006 ALJ decision, which Plaintiff herself elected not to appeal, left no

16   harm for this court to cure.

17              **C.      The Harm is Not Capable of Repetition Yet Evading Review**

18       The United States Supreme Court has carved out an exception to the general principles

19   of mootness set forth above for cases in which the challenged conduct is capable of repetition

20   yet evades review.  The exception is limited to "extraordinary cases" where "(1) the duration

21   of the challenged action is too short to allow full litigation before it ceases, and (2) there is

22   a reasonable expectation that the plaintiffs will be subjected to it again."  *Alaska Ctr. for the*

23   *Env't v. United States Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999).  The first prong of the

24   test is satisfied only if the "underlying action is almost certain to run its course before [the]

25   court . . . can give the case full consideration."  *Id.*  The second prong requires "some

26   indication that the challenged conduct will be repeated."  *Id.* at 856.

27       Plaintiff's conclusory assertion that "Medicare appeals have a very short life cycle"

28   is plainly insufficient to satisfy the first prong of the repetition/evasion exception.  (Doc. #

52 at 12.)  Plaintiff alleges no facts tending to show that the administrative review process is "almost certain to run its course" before this litigation has concluded.  In fact, the pendency of Plaintiff Judith Schneider's administrative appeal from the unfavorable March 13, 2006 decision at the hearing level proves just the opposite.  Evasion of review is unlikely because any beneficiary whose claim for Medicare coverage is rejected, either by an ALJ or by the Appeals Council, has an enduring claim for relief.  Plaintiff's citation to the recent decision of the Court of Appeals for the Ninth Circuit in *American Civil Liberties Union of Nevada v. Lomax*, 2006 WL 3525179 (9th Cir. 2006), while relevant inasmuch as it discusses the repetition/evasion standard set forth above, does not bear closely on the circumstances of this case.

Even if the first prong of the test were met, Plaintiff has failed to carry her burden of showing that she would in all probability be subject to the same kind of unlawful conduct in the future.  The record is barren of any evidence tending to show that she will ever again contest a Medicare coverage determination under the Secretary's defective hearing regulations.  However, the court need not consider the second element of the test if the first prong is not even arguably satisfied.  This "extraordinary" exception to the mootness doctrine does not apply to this case and the court lacks jurisdiction over Plaintiff's claim.  *Alaska Ctr. for the Env't*, 189 F.3d at 855.

### D.   The Class Action Exception Does Not Apply

Finally, Plaintiff contends that styling her Complaint as a class action, without more, entitles her to an exception to the mootness doctrine for putative class representatives.  (Doc. # 28 at 3).  This argument is without merit.  Plaintiff must have at least filed a motion for class certification pursuant to Fed. R. Civ. P. 23(c)(1) before the exception may apply.  This lawsuit was initiated on December 22, 2005, and Plaintiff Webber's substantive claim to Medicare benefits was live until the September 15, 2006 decision of the ALJ.  It would be strange to conclude that Plaintiff Webber did not have an opportunity during that nine-month period to, at the very least, file a motion for class certification while she still had a legally cognizable interest in the outcome of her lawsuit.  "When claims of the named plaintiffs

1  become moot before class certification, dismissal of the action is required." *Lusardi v. Xerox*

2  *Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (internal quotations omitted).

3        In *Sosna v. Iowa*, 419 U.S. 393, 402 (1975), the United States Supreme Court held that

4  Article III's "personal stake" requirement could be relaxed insofar as the mootness of a

5  named plaintiff's individual claim after a class had been duly certified did not render the

6  action moot.  The Court's decision rested upon a distinction between the "two separate

7  issues" presented by a plaintiff who seeks to maintain a class action:  One issue is the

8  procedural right to represent the class; the other is the merits of the underlying dispute.

9  *Geraghty*, 445 U.S. at 402.  After separating the procedural right to maintain a class action

10  from the ultimate merits, the Court relied on the class representative requirements of Fed. R.

11  Civ. P. 23, rather than Article III mootness doctrine, to ensure effective adjudication of live

12  claims.  *Id.* at 415 n.8 ("Certification is no mere formality . . . Vigorous advocacy is assured

13  by the authoritative imposition on the named plaintiffs of a duty adequately to represent the

14  entire class. If the named plaintiff's own claim becomes moot after certification, the court can

15  re-examine his ability to represent the interests of class members. Should it be found

16  wanting, the court may seek a substitute representative or even decertify the class.")

17  Litigation could continue because the personal stake of other class members was attributed

18  to the class representative.  There was no danger of an advisory opinion on an abstract

19  proposition of law because the parties were still situated in an adversarial posture.

20        In *Geraghty*, the Supreme Court extended the holding of *Sosna* to allow a putative

21  class representative to appeal the denial of a motion for certification pursuant to Fed. R. Civ.

22  P. 23(c)(1), notwithstanding the fact that his personal stake in the merits of the controversy

23  had become moot.  The putative class representative retained a "personal stake" in obtaining

24  class certification even though his substantive claim had expired.  *Geraghty* illustrates the

25  flexibility of the constitutional doctrine of mootness.  For the exception to apply, however,

26  the putative representative must satisfy Article III's case-or-controversy requirement at the

27  time of his motion for class certification, "and the class must continue to possess a justiciable

28

1   claim." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice
2   and Procedure § 3533.9 (2nd ed. 1987).

3        The holdings of *Sosna* and *Geraghty* have been invoked even in the absence of a
4   ruling on class certification under certain exceptional circumstances.  This extension was
5   presaged by the *Geraghty* decision itself.  The Supreme Court in *Geraghty* noted that some
6   claims may be so "inherently transitory" that the trial court cannot reasonably be expected
7   to *rule* on the motion for certification presented to it by the putative representative of a
8   constantly changing class before the expiration of that plaintiff's substantive claim. 445 U.S.
9   at 412.  This approach has been adopted by the courts of appeal only with respect to
10  circumstances that threaten to deprive the courts of any plaintiff at all.  *See Trotter v. Klincar*,
11  748 F.2d 1177, 1184 (7th Cir. 1984) (explaining that the "inherently transitory class"
12  exception is designed to facilitate "full judicial review of challenged government action
13  whose intrinsically fleeting duration would prevent any single plaintiff from remaining
14  subject to that action for the time necessary to complete the litigation").

15       In *Wade v. Kirkland*, 118 F.3d 667 (9th Cir. 1997), for example, the Court of Appeals
16  for the Ninth Circuit held that the putative representative of a class of short-term pretrial
17  detainees had standing to appeal a district court's dismissal of his challenge to the "chain
18  gang" working conditions in a county jail.  Although the named plaintiff was no longer an
19  inmate in the detention facility, his appeal was sheltered by the rule of *Sosna* and *Geraghty*
20  because his motion for class certification, duly filed pursuant to Fed. R. Civ. P. 23(c)(1), had
21  not been decided in any meaningful sense by the district court.  The court in *Wade* remanded
22  to the trial court with instructions to decide the putative representative's motion, noting that
23  the pre-trial detainee appeared to present the "classic example of a transitory claim that cries
24  out for a ruling on certification as rapidly as possible."  118 F.3d at 670.  If the district judge
25  found the plaintiff's claims to be "inherently transitory," he could "validly certify the class
26  on remand, even though the named plaintiff's claims are already moot, since the relation back
27  doctrine will relate to Wade's standing at the outset of the case in order to preserve the merits
28  of the case for judicial resolution."  *Id*. (citation and internal quotations omitted); *cf. Sze v.*

*I.N.S.*, 153 F.3d 1005 (9th Cir. 1998) (applicants for naturalization whose citizenship status was undetermined more than 120 days after examination by INS officers were not entitled to mootness exception for class representatives because the class was not constantly changing but rather constantly shrinking as the INS resolved each applicant's case).

Plaintiff Webber included class action allegations in her Complaint.  (Doc. # 28 at 3.) Unlike the putative class representatives in any of the foregoing decisions, however, Plaintiff Webber has not moved pursuant to Fed. R. Civ. P. 23(c)(1) for class certification.  Because of her inaction, the court can only speculate as to Webber's ability to adequately represent the class defined by her in the initiatory pleading to include "all Medicare beneficiaries whose claims for Medicare coverage have been or will be denied, in whole or part, and who have sought or will seek ALJ review of their claims and are subject to the new regulations at 42 C.F.R. §§ 405.1000-.1064."  (Doc. # 28 at 4.)  Plaintiff may not invoke *Sosna* and *Geraghty* because she has not filed a motion for class certification, which is the essential prerequisite to the inherently transitory class exception.  *Nestler v. Bd. of Law Examiners of N. Carolina*, 611 F.2d 1380, 1382 (1980) (Law students' action against law examiners for refusing them permission to sit for the bar examination on the basis of misdemeanor convictions for possession of marijuana was dismissed as moot: The individual claims of the students did not satisfy Article III because each candidate was admitted to the state bar while the lawsuit was still pending, and simply filing the lawsuit as a class action did not entitle the putative class representatives to an exception to the mootness doctrine.  A duly filed motion for class certification was required.)

Even if the court were to overlook Plaintiff's failure to file the class certification motion, which it may not, Plaintiff's attempt to finesse the mootness issue would still fail. For her standing to relate back to the initiation of this action, Webber must do more than assert, as she does now wholly without evidentiary support, that "this case involves the classic example of 'transitory claims'" (Doc. # 52 at 13.)  Mere citation to *Wade* and other cases discussing the mootness exception for inherently transitory claims is not sufficient. Instead, Ninth Circuit precedent places the burden on Webber to show both a "constantly

1  changing putative class," and exigent circumstances that make it impossible for the "trial

2  court . . . to rule on a motion for class certification before the proposed representative's

3  individual interest expires." *Sze*, 153 F.3d at 1010.  The record is totally barren of any such

4  evidence.

5     Plaintiff attempts to explain away her less than diligent pursuit of class certification

6  by reference to Defendants' motions practice.  "Because a preliminary conference under

7  LRCiv 16.2(b)(3)(B) to establish the scheduling process has not been set yet, Plaintiff could

8  not even have filed a motion for class certification prior to Defendants' motion to dismiss."

9  (Doc. # 52 at 14.)  But nothing in that Local Rule, which states in relevant part only that a

10 scheduling conference "shall be scheduled within one-hundred eighty (180) days of filing,"

11 forecloses the timely filing of a motion for class certification.  LRCiv 16.2(b)(3)(B).  In fact,

12 Rule 23(c)(1) expressly encourages prompt action by a putative class representative so that

13 the trial court may determine, "at an early practicable time . . . whether to certify the action

14 as a class action."  Fed. R. Civ. P. 23(c)(1).  In many districts, although not in this one, the

15 expedited ruling contemplated by Rule 23(c)(1) is facilitated by local rules requiring putative

16 class representatives to move for certification within 60 days of filing the complaint.  *See*

17 *Trotter*, 748 F.2d at 1185 n.9 (surveying local rules requiring expeditious class certification

18 in various judicial districts of New York, Oregon and Tennessee).  Contrary to Plaintiff's

19 assertions, Webber had a "reasonable opportunity" to file a motion pursuant to Rule 23(c)(1).

20 *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004).  She simply failed to do so.

21    Plaintiff Webber next contends that, even if she had been able to file a motion for

22 class certification, that motion could not have been briefed and decided prior to resolution

23 of her substantive claim to Medicare benefits.  (Doc. # 52 at 14.)  This argument

24 misapprehends the threshold criterion.  The applicability of the inherently transitory class

25 exception turns not on the resolution of the motion for class certification on the merits, but

26 rather on the assertion by a named plaintiff of the procedural right to represent an inherently

27 transitory class.  "The class is not considered a separate entity" until a plaintiff "move[s] for

28 class certification."  *Nestler*, 611 F.2d at 1382.  "No implied class certification doctrine can

1  take the place of, or be deemed to substitute for, an appropriate grant of class certification."

2  *Brown v. Philadelphia Housing Auth.*, 350 F.3d 338, 346 (3d Cir. 2003) (district court treated

3  case as class action but plaintiffs never moved for class certification; on appeal, Rule 23(c)(1)

4  motion was required for mootness exception to apply because class certification is not merely

5  a "verbal recital"); *Nelson v. Murphy*, 44 F.3d 497 (7th Cir. 1995) (mootness exception could

6  apply when district court failed to rule on fully brief motions for class certification over

7  three-year period during which time putative class representatives' claims became moot).

8       It is not necessarily true, as Plaintiff contends, that the implementing regulation

9  prescribing a 90 day time limit for resolution of appeals conducted by videoteleconference

10  makes it "virtually impossible for a class motion to be filed and resolved before a decision

11  is issued on the merits of [her] claim" at the hearing level.  (Doc. # 52 at 14.)  But even if it

12  were true, that argument has no force here.  It is the filing of a motion for class certification

13  by a plaintiff with a legally cognizable interest in the outcome of the lawsuit, not the

14  resolution of that motion at some later time when the parties are no longer adversaries, that

15  qualifies the putative representative to the mootness exception.

16       Plaintiff Webber's failure to timely file a motion for class certification may not be

17  cured because she no longer has a live controversy and therefore cannot satisfy the

18  jurisdictional prerequisite of Article III.  "Without a rule that plaintiff have a live claim at

19  least when the motion to certify is filed, the case or controversy requirement would be almost

20  completely eviscerated in the class action context."  *Lusardi*, 975 F.2d at 973-84.  Plaintiff's

21  challenge to the Secretary's centralization of Medicare coverage hearings in four nationwide

22  locations must therefore be dismissed as moot.

23  **IV.   Plaintiffs' Motion for Reconsideration: The Venue Ruling is Withdrawn**

24       **A.   Defendants Did Not Waive their Objections to Venue**

25       Plaintiffs note, correctly, that an improper venue defense will be waived under the

26  Federal Rules of Civil Procedure if it is not timely raised in a preliminary motion under Rule

27  12 or, if such motion is not made, in the responsive pleading or an amendment as of right to

28  that pleading under Rule 15(a).  Fed. R. Civ. P. 12(h)(1); *see Weinberger v. Salfi*, 422 U.S.

1   749, 764 (1975) (applying Rule 12(h)(1) to claims arising under the Social Security Act).

2   Because Defendants raised the defense of improper venue in their Motion to Dismiss as

3   required by the Federal Rules, this defense is not waived.  (Doc. # 25 at 9-10.)  Plaintiffs

4   arguments to the contrary rest upon an overly crabbed reading of the applicable precedent.

5   (Doc. # 54 at 1.)  Defendants' failure in prior submissions to the court to assert the precise

6   venue arguments that they now urge in their responsive memorandum, doc. # 53, is of no

7   moment.  "As the Supreme Court has made clear, it is claims that are deemed waived or

8   forfeited, not arguments."  *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir.

9   2004) (quoting *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995)).

10                    **B.      Reconsideration of the Venue Ruling Is Warranted**

11            It is Plaintiffs' contention that the general federal venue statute, 28 U.S.C. § 1391(e),

12   whose leniency was to some extent anticipated by Congress when it enacted 42 U.S.C. §

13   405(g), should be applied in this case to allow a non-resident to join a resident in challenging

14   different aspects of a claim appeals policy that systematically violates their right to local, in-

15   person Medicare coverage appeal hearings before an ALJ.  Adopting Plaintiffs' interpretation

16   of the Medicare venue statute would permit Judith Schneider, a resident of Ohio, to join

17   Eleanor Webber, a resident of Arizona, in this action.

18            As previously noted, the court strictly interpreted the phrase "the plaintiff" in the

19   venue provision of the Social Security Act without the benefit of adequate briefing.  (Doc.

20   # 45 at 5-6.)  Although the parties have not identified, and the court has not located, any

21   controlling authority on point, the memoranda submitted by the parties have shed

22   considerable light upon this unsettled area of the law.  The focused authority now before the

23   court suggests that the operative venue language of 42 U.S.C. § 405(g) should be construed

24   in harmony with that of 28 U.S.C. § 1391(e), such that non-resident Plaintiffs who

25   independently satisfy the irreducible constitutional minimum of standing may join similarly

26   situated resident Plaintiffs in challenging the Secretary's infringement upon their right to

27   local, in-person Medicare coverage appeal hearings.  Though the question is close, the court

28

is persuaded to reconsider its interpretation of the Medicare venue rule in favor of the more liberal construction urged by Plaintiffs.

However, withdrawal of the court's prior venue ruling is of no practical consequence where, as here, there is no longer an action by a resident plaintiff for a non-resident plaintiff to join. The court does not have subject matter jurisdiction over resident Plaintiff Webber's cause of action because her claim is moot and she is not entitled to any exception to the standing requirement. While Plaintiff Schneider's prayer for injunctive and declaratory relief is not moot, she may not lay venue in the District of Arizona pursuant to section 1395ff(b)(1)(A) of the Medicare Act because she is not a resident of this State and there is no action by a resident plaintiff for her to join.

Plaintiff Frank, a resident of Kansas, requests leave to amend to allege standing in light of the recent denial of her request for an in-person Medicare coverage hearing. (Doc. # 46 at 8 n.3.) The court assumes Plaintiff Frank could allege standing, but will deny leave because improper venue would defeat the amendment. Ms. Frank, like Ms. Schneider, is not a resident of Arizona.

**V.    Summary of Holdings**

The court's rulings in this case, including alternative holdings, may now be summarized as follows:

1.    **Standing**: Plaintiff Judith Schneider and, presumably, Plaintiff Anna Frank, are the only litigants with standing to sue. (Doc. # 45 at 12.) Plaintiff Webber's claim is now moot, and Plaintiffs Prescott, Upton and Chazen never suffered a cognizable procedural injury. (*Id*. at 11-12.) Plaintiff Gray Panthers Project Fund has neither representational nor organizational standing. (*Id*. at 13-15.) No Plaintiff alleges or could allege sufficient standing for a pre-hearing challenge to the regulation's attempted extinguishment, for persons given an in-person hearing, of the statutory requirement to rule in 90 days. (*Id*. at 12-13.)

2.    **Venue**: Section 405(g) of Title 42, which contains the venue rule for Medicare litigation, should be construed in harmony with the general venue rule of 28 U.S.C.

§ 1391(e), such that non-resident Plaintiffs may join similarly situated resident Plaintiffs in challenging the Secretary's infringement upon their right to local, in-person Medicare coverage appeal hearings before an ALJ. However, there is no Plaintiff with both standing to sue and Arizona residency remaining in this case.

3.    **Exhaustion**: Though her claim is now moot, the administrative exhaustion requirement contained in 42 U.S.C. § 405(g) is excused as to Plaintiff Webber. (Doc. # 45 at 15-20.) Exhaustion is also excused for Plaintiff Schneider.

4.    **Mandamus**: Under the statutes invoked, Plaintiffs did not and cannot plead sufficiently the court's mandamus jurisdiction under 28 U.S.C. § 1361. (*Id*. at 20-21.) Thus, venue does not lie under the general federal venue rules that apply to mandamus actions. (*Id*. at 6, 20.)

IT IS THEREFORE ORDERED that Defendants' Motion for Reconsideration, doc. # 47, is granted. Plaintiff Eleanor Webber's claim is dismissed for lack of jurisdiction over the subject matter, Fed. R. Civ. P. 12(h)(3).

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Reconsideration, doc. # 46, is denied.

IT IS FURTHER ORDERED pursuant to this Order and the September 6, 2006 Order, doc. # 45, that the clerk enter judgment dismissing the Amended Complaint, doc. # 28, and dismissing this action for lack of subject matter jurisdiction as to Plaintiff Webber and the Gray Panthers Project Fund, for improper venue as to Plaintiffs Schneider and Frank, and for both grounds as to Plaintiffs Chazen, Prescott and Upton.

IT IS FURTHER ORDERED that the clerk shall terminate this action.

DATED this 7th day of February 2007.


Neil V. Wake
United States District Judge